UNITED STATES of America on
Behalf of SMALL BUSINESS
ADMINISTRATION, Plaintiff,

v.

Edmund WIDEMAN, Jr. and Edmund
Wideman, III, Defendant,

v.

Anthony FORGIONE and Slushy, Inc.

v.

Seymour HIRSCHHORN and
Frieda Hirschhorn.

Civ. No. 83–1865.

United States District Court,
M.D. Pennsylvania.

May 30, 1985.

Mary Spearing, Ass't. U.S. Atty., Harrisburg, Pa., Barbara Kosik, Ass't. U.S. Atty., Scranton, Pa., for plaintiff.

John Q. Durkin, Myles R. Wren, Howard Rothenberg, Scranton, Pa., Elliot B. Edley, John H. Doran, Wilkes-Barre, Pa., Bruce J. Phillips, Forty Fort, Pa., for defendant.

1. Also in this action are Anthony Forgione and Slushy, Inc., (Third Party Defendants and Fourth Party Plaintiffs) and Seymour and Frieda Hirschhorn (Fourth Party Defendants).

MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, Small Business Administration [SBA], filed this civil action December 29, 1983 pursuant to 28 U.S.C. § 1345 against Defendants Edmund C. Wideman, Jr. and Edmund C. Wideman, III,[1] alleging that defendants signed a guaranty agreement for a loan presently in default and that defendant-guarantors are liable for the outstanding balance.

By Order dated December 28, 1984, the court ordered the parties to file supplemental briefs to enable the court to resolve the plaintiff's motion for summary judgment. Defendant Wideman, III filed a cross-motion for summary judgment and a brief in support thereof February 28, 1985 and March 14, 1985, respectively. A supplemental brief in support of its motion for summary judgment was filed April 23, 1985 by SBA. While Defendant Wideman, Jr. has not filed a supplemental brief, he has indicated, through his attorney, that because of the similarity of interests between himself and E.C. Wideman, III in this matter, he will rely upon the briefing submitted by E.C. Wideman, III's attorney. The motions are now ripe for disposition. For the reasons set forth below, SBA's motion for summary judgment will be granted.

## I. FACTS

The undisputed facts as established by the affidavits are as follows: Defendants Wideman, Jr. and Wideman, III executed Guaranty Agreements with Plaintiff SBA in the Fall of 1972. The purpose of the Guaranty Agreements was to secure a promissory note in the amount of $199,-000.00 which had been extended to Slushy, Inc. by SBA. As collateral for the loan, a security interest in Slushy's equipment and machinery was taken by SBA in 1972.

While several cross-claims and counter claims have been filed among the parties, only the original plaintiff and original defendants are involved in this Order.

This security interest, while renewed in 1977, was not renewed in the Fall of 1982. The payments under the loan to be made by Slushy became delinquent and warning notices were sent to the principals and guarantors that the maturity date of the loan would be accelerated if the payments did not become current. In May of 1982, Defendant Wideman, III sent SBA $5,000.00 to bring the interest on the loan current. In return, SBA reinstated that maturity date of the loan. The Slushy loan, however, went into default again and in November, 1983, SBA demanded immediate payment of the delinquent balance from the guarantors. This action ensued.

## II. MERITS

Defendants argue that they are relieved of their obligation under the Guaranty Agreement due to the failure of SBA to renew its security interest in Slushy equipment.[2] Had the security interest been renewed, defendants allege, that collateral would have been available to satisfy the debt owed by Slushy. Defendants contend that SBA's conduct was willful in this regard. The specific language in the Guaranty Agreement upon which defendants rely reads as follows:

> The obligations of the Undersigned, and the rights of the Lender in the collateral shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender: ... by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral, *unless* such deterioration, waste or loss be caused by the *willful act or willful failure to act of Lender.*

Document 1 of the Record at 7, ¶ 5 (emphasis added). In failing to renew the security interest, defendants maintain that SBA's conduct was a willful failure to act which relieves defendants of all obligations under the agreement.

The court believes that defendants misconstrue the meaning of this paragraph. As noted in the previous Order dated December 28, 1984, the Guaranty Agreement grants to SBA considerable authority and power. Memorandum (December 28, 1984), Document 33 of the Record at 4. SBA, in its uncontrolled discretion, may deal with the liabilities and collateral in any manner. In the face of this strong language, defendants argue that failing to perfect the security interest in the collateral—collateral which SBA could release, if it so wished—constitutes a willful loss, deterioration or waste of the collateral. SBA, however, argues that the clause refers to physical loss or deterioration and cites a number of different circuits which have adopted this theory. *See, e.g., United States v. Houff,* 202 F.Supp. 471 (W.D.Va.1962); *United States v. Abbruzzese,* 553 F.Supp. 11 (E.D. Mich.1982); *Duke v. Reconstruction Furnace Corp.,* 209 F.2d 204 (4th Cir.1954). The court believes such a conclusion is a more reasonable interpretation of the clause.

The guaranty contract at issue contains a provision specifically preserving the liability of the guarantor even where a valid lien is not created in favor of the SBA. That specific provision expresses the intent of the parties with respect to the failure to create a lien, and in reading the guaranty *in pari materia,* the more precisely tailored provision, rather than the deterioration clause, should govern the instant facts. A reasonable, and harmonious, reading of the guaranty as a whole suggests that the two clauses take their meaning from one another, that the former clause applies to the failure to perfect a lien, and that the latter be restricted to those occurrences of physical damage suggested by the words "or loss by fire, theft or otherwise." In addition, the principle of *ejusdem generis* counsels that the words "or otherwise" be interpreted to mean a loss similar in

2. Defendants had argued previously that SBA should seek payment from other sources before demanding payment from the guarantors. The court held that the clear language of the Guaranty Agreement precluded this argument. Memorandum (December 28, 1984), Document 33 of the Record at 3–4.

kind or quality to those specified (fire and theft) and that, when read together with the preceding clause regarding failure to create a valid lien, they not be expanded to embrace the much broader meaning of waste or deterioration that Defendants would ascribe to them.

*United States v. Abbruzzese*, 553 F.Supp. 11, 12–13 (E.D.Mich.1982).

This interpretation simply makes more sense. If under the agreement, SBA may dispose of the collateral or release it at any time without the consent of the guarantors, then a mere failure to perfect a security interest in the collateral should not extinguish the obligation of the guarantors. *United States v. Ross*, 554 F.Supp. 928, 931 (E.D.Mich.1983) ("Language in the guaranty...making SBA liable for loss to the property caused by its own willful acts or omissions should not be read to apply to diminishment in value caused by failure to take possession" of the property.) (citations omitted). *See also United States v. Andresen*, 583 F.Supp. 1084 (W.D.Va.1984); *United States v. Flasher Co. of Texas*, 460 F.Supp. 231, 233 (S.D.Tex.1977); *Duke v. Reconstruction Finance Corporation*, 209 F.2d 204 (4th Cir.1954). The court is persuaded that this is a more rational approach and thus will reject defendants' argument.

Even assuming *arguendo* that defendants properly asserted this clause as a defense, the court would still grant SBA's Motion for Summary Judgment. While defendants allege a willful failure to act, they do so in a conclusory fashion absent a corroborating factual basis for such an allegation.

"Willful, at the very least, implies an intent to bring about deterioration in the

specific collateral." *United States v. Slezak*, 543 F.Supp. 63 (N.D.Iowa 1981) (citing *U.S. v. Proctor*, 504 F.2d 954 (5th Cir.1974) and *Houff, supra*). In support of their argument[3] that the failure to renew the security interest in the collateral was willful, defendants excerpt particular portions of the deposition transcript of James D. Servidio, the SBA administrator in charge of the defaulted Slushy loan. This testimony, however, does not remotely imply any specific intention to act in a manner which would be harmful to the guarantors or to the collateral. The very most that could be said for the facts as stated, and the court is not expressing an opinion, is that there was negligence.

The relevant portions of Mr. Servidio's deposition read as follows:

Q Mr. Servidio, you indicated that the system, apparently failed in not having the security agreements, financing statements revived which would have been in late 1982.

Was it ever brought to your attention through any of the system, that the statements were about to lapse?

A No.

Q Did it ever come to your attention where you had to make a decision or recollection relative to renewal or not renewal?

A No, the period in which they apparently—we know they weren't renewed. They had to be renewed on or before November '82.

. . .

Q Were you able to make any determination as to at what point the system failed to have them renewed?

---

**3.** While Defendant Wideman, III advances the argument that SBA willfully and knowingly abandoned any collection attempt in the collateral, this is a secondary argument and is precluded by the Agreement and this Court's holding in its previous Order dated December 28, 1984. Again, the pertinent clause of the Guaranty Agreement reads:

Lender shall not be required...to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or oth-

ers with respect to the payment of any of the Liabilities, *or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral.*

Document 1 of the Record at 7, ¶ 4 (emphasis added). SBA is empowered to pursue the guarantors before pursuing the debtor or the collateral. Thus, whether a decision was made by SBA to abandon collection attempts on the collateral is plainly irrelevant.

A  I assume it was the system.  I don't know what happened.  There was, apparently an oversight, whether it was human error or computer error or what.

Q  But your knowledge and analysis of what the inventory may have consisted of, did not attribute to the fact that there was no renewal in November of '82?

### ORDER

NOW, this 30th day of May, 1985, IT IS HEREBY ORDERED THAT plaintiff's motion for summary judgment is granted; defendants' cross motion for summary judgment is denied and judgment is hereby entered for plaintiff in the amount of $154,-335.27 plus accrued interest and costs and against Defendant-Guarantors Wideman, III and Wideman, Jr.