LAWRENCE E. MOONEY, JUDGE
The parties to a commercial lease dispute whether the tenant effectively exercised her option for the renewal of the lease. Landlords Greg Shocklee and his wife Deborah Shocklee appeal from the trial court's judgment ruling in favor of tenant Albers Chiropractic Health Centre, P.C., and ordering specific performance, renewing the lease between the parties. We reverse because Dr. Albers did not provide a definite and unqualified statement exercising her option to renew, in a manner consistent with the terms of the lease.
Factual and Procedural Background
The Shocklees and Susan Albers, as President of Albers Chiropractic Health Centre, P.C., entered into a commercial lease in April of 2012. That lease, which expired on March 31, 2017, contained a renewal provision providing that absent default, at the end of the initial or any renewal term:
Lessee shall have the option to renew this lease for two (2) consecutive five (5) year terms commencing on the expiration of the initial term (and each succeeding renewal term) by giving written notice of the exercise thereof to Lessor no later than ninety (90) days [prior to expiration], by registered mail, return receipt requested.
*85 In a letter dated November 15, 2016, Dr. Albers wrote Mr. Shocklee regarding the lease, stating:
My current lease comes up for renewal on April 1, 2017. I would like to exercise my option to renew for a period of three years ending April 1, 2020. If you want me to provide a copy of the lease as I have done in the past for your review I will be happy to do so. I would like to get this finalized as soon as possible. Thank you for your consideration.
The Shocklees did not respond to Dr. Albers's letter. Mr. Shocklee did not believe the letter effectively exercised Dr Albers's right to renew, because she had changed the renewal term from five years to three years. Instead, he considered the letter an attempt by Dr. Albers to renegotiate the terms of the lease, and thus he considered the lease unrenewed and set to expire on March 31, 2017.
By letter dated February 28, 2017, the Shocklees advised Dr. Albers of certain alleged breaches of the lease, and informed Dr. Albers that the lease would terminate effective March 31, 2017. They directed Dr. Albers to vacate the premises by that date. She did not do so.
The Shocklees sued Dr. Albers for breach-of-contract and unlawful detainer.[1] Dr. Albers counterclaimed for specific performance of the lease, seeking a judgment ordering the Shocklees to renew the lease for a five-year term.
The circuit court held a bench trial, and then ruled in favor of Dr. Albers. As to the doctor's request for specific performance, the circuit court found and ordered that the parties had entered into a five-year lease, commencing April 1, 2017. The circuit court reasoned that once Dr. Albers said "I want to renew," Dr. Albers had renewed the lease. The circuit court considered as superfluous any other language in Dr. Albers's letter-including the language requesting a three-year term. The circuit court further explained that it ordered a five-year instead of a three-year term because in its view, any renewal under the lease had to be for five years.
At a hearing on their motion for new trial, the Shocklees argued that Dr. Albers had not effectively renewed the lease. In sum, they argued that Dr. Albers had made a counteroffer, not an election to renew. They maintained that when Dr. Albers added the extra term of "for three years" instead of the negotiated term of five years, Dr. Albers had made a counteroffer, which the Shocklees had not accepted. Thus they argued that because Dr. Albers only submitted a counteroffer and not an election to renew for the five-year term, she never actually elected to renew before the lease expired.
The circuit court disagreed, and reiterated its conclusion that Dr. Albers had exercised her option to renew. The court explained:
She said I exercise my option to renew. ... She gets exactly what's in the contract and nothing else under the absolute right to renew. .... The lease doesn't anticipate any disapproval by your guy Shocklee. It doesn't say he gets a right to reject her option to renew.
*86 ... It's not an offer. It's not an offer and acceptance. I find that it's a right, and when she exercised her right she could only get one thing.... Your guy doesn't have the power in the lease to come back and go, well, you know what, Dr. Albers, I'm rejecting your option to renew. He can't do it. And so, therefore, the mere fact that she exercised her option to renew and threw a new term on there doesn't change anything. That's what I find. It fundamentally does not change her exercise of her option to renew. Okay. It's [renewal] automatically triggered.
The trial court denied the Shocklees' motion. The Shocklees now appeal.
Standard of Review
In court-tried cases, this Court will affirm the circuit court's judgment unless it is against the weight of the evidence, or no substantial evidence exists to support it, or the judgment erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We review questions of interpretation and application of a contract de novo as a matter of law. Patterson v. Rough Road Rescue, 529 S.W.3d 887, 893 (Mo. App. E.D. 2017).
Discussion
The lease provided that Dr. Albers had the option to renew the lease for two consecutive five-year terms by giving written notice of the exercise of that option to the Shocklees, by registered mail, return receipt requested, no later than ninety days prior to March 31, 2017. The Shocklees agree that Dr. Albers timely sent her letter by registered mail, return receipt requested. The dispositive question here is whether the doctor's letter exercised her right to renew under the lease. We hold that it did not.
If a lease includes an option to renew, a tenant's notice of renewal must indicate a definite and unqualified determination to exercise the option. Behlmann v. Weaks , 150 S.W.3d 153, 156 (Mo. App. E.D. 2004) ; Jones v. Landmark Leasing, Ltd., 957 S.W.2d 369, 374 (Mo. App. E.D. 1997). The Behlmann case provides guidance, as it also involved a renewal provision in a commercial lease. That provision granted the tenant two five-year option periods. The lease automatically renewed unless the tenant notified the landlord. In response to landlord's notice of the upcoming lease expiration date, the tenant stated:
It would be my intent to renew the lease; and since the leasehold improvements have been paid for, an appropriate reduction in the monthly rent is anticipated.
Behlmann , 150 S.W.3d at 155. The landlord replied, stating that the lease would extend for a five-year period, and then set forth the new, increased rent amount, noting that the lease provided for a change of rent during the new lease period. Id. The tenant remained in possession of the premises and paid the increased rent, but then vacated the property about a year prior to the expiration of the lease. Id. The landlord sued to recover unpaid rent through the end of the lease term. Id. The tenant moved for summary judgment, claiming that she did not exercise her option to renew because the minds of the parties never met on the renewal terms, and therefore asserted that she was a month-to-month tenant who was no longer bound by the terms of the expired lease. Id. The trial court granted tenant summary judgment. Id. This Court reversed on appeal, holding that genuine issues of material fact existed whether the tenant renewed lease, which therefore precluded summary judgment. Id. at 156-57. Importantly, this Court also found that the tenant's notice of *87 renewal did not accept the lease in the form tendered, and that her letter did not create an acceptance of the renewal of the lease term. Id. at 156.
As in Behlmann , Dr, Albers's letter was not consistent with the form and terms of the lease, as negotiated and agreed to by the parties. Dr. Albers began her letter stating "I would like to exercise my option to renew," but then, as in Behlmann , added an additional term not consistent with the lease. The trial court gave great weight to Dr. Albers's statement "I would like to exercise my option to renew," but then disregarded the rest of the letter, concluding by these few initial words that Dr. Albers had exercised her option to renew the lease. In doing so, the trial court erred We must consider the letter in its entirety, along with the lease agreement. See Cure v. City of Jefferson , 380 S.W.2d 305, 310 (Mo. 1964) (quoting Restatement (First) of Contracts Section 235 (1932) ), And in so doing, we conclude that Dr. Albers did not want to renew the lease according to the terms previously negotiated. Instead, the doctor desired a lease term of three years, not the five-year term previously bargained for and agreed to under the lease. Dr. Albers used the word "would," which is commonly used to express a wish, a desire, an intent, a preference. The Merriam-Webster Online Dictionary , www.merriam-webster.com/dictionary/would (last visited June 19, 2018). She offered to provide a copy of the lease, for the Shocklees' review. A new copy was hardly necessary, if Dr. Albers was proceeding under the current agreement. And lastly, Dr. Albers thanked the Shocklees for their "consideration." The parties agree that renewal under the lease was not subject to the Shocklees' approval. Rather, Dr. Albers had the sole right to determine whether she would renew the lease. If Dr. Albers was proceeding under the lease in place, and intended to renew the lease according to the agreed-upon terms, no "review" or "consideration" by the Shocklees was needed or required.
Dr. Albers conditioned her renewal on the Shocklees agreeing to a three-year term of renewal instead of the five-year term negotiated. Her letter sought to change the terms of the agreement. Her letter thus was not a definite and unqualified statement exercising her option to renew, in a manner consistent with the terms of the lease.
Conclusion
Dr. Albers's letter was insufficient to exercise her option to renew the lease. Thus, there was no renewal, and the lease expired by its terms on March 31, 2017. We reverse the judgment and remand the cause to the trial court for proceedings consistent with this opinion.
JAMES M. DOWD, P.J., and ANTHONY REX GABBERT, Sp.J, concur.

The Shocklees claimed that Dr. Albers had breached the lease by failing to abide by certain inspection requirements and by failing to timely pay rent on numerous occasions. The circuit court entered judgment in favor of Dr. Albers on the Shocklees' breach-of-contract claim, expressly ruling that Dr. Albers was not in default. The circuit court found Mr. Shocklee not credible on this matter, and that he had failed his burden of producing evidence to support his claim of default. The Shocklees do not appeal the circuit court's ruling on this matter. The Shocklees have thereby abandoned the breach-of-contract issue. The circuit court's ruling thus stands-Dr. Albers was not in default.